**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 25, 2025**

# In the Court of Appeals of Georgia

A25A0045. COELHO v. WERTZER.

DOYLE, Presiding Judge.

Saul Wertzer sued Christopher Coelho for specific performance and a preliminary injunction regarding the sale of units of Coelho's ownership interest in Rent Recovery Solutions, LLC ("RRS"), to Wertzer. After the trial court entered an order in favor of Wertzer on Coelho's declaratory judgment counterclaim, Coelho appealed, which appeal we initially dismissed.[1] On motion for reconsideration, this Court reinstated the appeal but directed the parties to brief the issue of whether Coelho's counterclaim was properly construed as a counterclaim for a declaratory judgment such that the trial court's order denying the counterclaim was directly

---

[1] See *Coelho v. Wertzer*, Case No. A25A0045 (order dated Aug. 6, 2024).

appealable while Wertzer's claims remained pending below. For the reasons that follow, we dismiss the appeal.

The record shows that RRS is a Georgia limited liability company, conducting business subject to an Amended & Restated Member Restriction Agreement ("Restriction Agreement"). RRS has outstanding 10,000 preferred units and 10,000 common units, of which Coelho owned 800 preferred units and 2,300 common units, and of which Wertzer owned 5,225 preferred units and 4,400 common units. Collete Peta, a third owner who is not a party to this litigation, owned 3,975 preferred units and 3,300 common units.

The Restriction Agreement provided that owners could sell their units only upon prior consent of RRS and the other owners or upon notice to RRS and the other owners, giving them the opportunity to exercise the right of first refusal to purchase the units. The right of first refusal provision stated that

> [t]he Notice [of intention to sell units] shall contain and fully describe all terms and conditions of the proposed transfer by the [Selling] Member[,] shall also include the identity of the proposed transferee[,] . . . and shall constitute an offer from the Selling Member to sell all or a portion of his or her [u]nits . . . to the Company, or, if the Company declines to so

purchase, to the remaining Member on the terms and conditions stated in the Notice.

Additionally, the Restriction Agreement provided for a procedure for exercise of the right of first refusal. The procedure provided that in the event RRS did not exercise its right of first refusal, the non-selling members

> shall have all the rights conferred upon [RRS] to purchase the Offered Interest and each Remaining Member shall have the right to purchase his or her pro rata portion of the Offered Interest (determined with reference to the number of [u]nits held by such Remaining Member relative to all of the [u]nits held by the Remaining Members). If there is only one electing Remaining Member, such Remaining Member shall be entitled to purchase, to the extent he or she so elects, all of the Offered Interest. . . .

In September 2023, Coelho provided notice to RRS and Wertzer that he intended to sell his units to "Prescott Group, its subsidiary Dyck O'Neal, Inc. or other affiliate" for the purchase price of $1,957,000. The notice contained a number of conditions of sale, including that the sale was conditioned on the simultaneous purchase of Peta's units for $2,500,000. Pursuant to the Restriction Agreement, RRS had 30 days to agree to purchase Coelho's units, which it declined to do. This triggered the "Remaining Members' Option Period," giving the remaining members

of RRS a 30-day period during which Wertzer contended that the remaining members had to agree to purchase a pro rata amount of the selling member's units, and Wertzer notified Coelho that he was going to purchase his pro rata portion of Coelho's units. Wertzer calculated his pro rata portion of Coelho's units to be 1,314.29 common units and 457.14 preferred units (57.14% of the Offered Interest), and Wertzer notified Coelho that he would purchase the units for $1,118,285.71 cash at a closing to be held within 30 days. On November 8, Wertzer's counsel provided Coelho with a simple purchase agreement to be executed at a closing on November 15, but Coelho refused to sell to Wertzer. Coelho contended that Wertzer had to agree to purchase all of his units and agree to simultaneously purchase Peta's units as stated in the notice.

Wertzer sued Coelho for breach of contract, requesting specific performance of his pro rata percentage purchase of Coelho's units, and he requested that the trial court enter a preliminary injunction preventing Coelho from selling the shares to other parties during the pendency of the litigation. Coelho answered and asserted counterclaims for breach of contract, slander of title, and declaratory judgment. Specifically, Coelho requested that the trial court declare:

a. The Notice of Right of First Refusal requires, as partial consideration, that any acceptance of an offer of his Offered Interest is expressly

4

conditioned contained therein, that is, that "Closing is Expressly conditioned on the simultaneous [c]losing of the purchase by the Proposed Transferee of all of [Peta]'s Units[;"]

b. The . . . Restriction Agreement requires . . . that in the event of a Member accepting the Right of First Refusal as an Offer, inter alia, that "[t]he purchase price of the Offered Interest and the terms and conditions of the sale of such offered interest shall be the same price, terms and conditions stated in the Notice, including the date for the closing of the sale and method of payment[; and"]

c. The p[ro]posed "acceptance" . . . is not a valid legally binding acceptance of an offer but is, to the contrary, a counteroffer not authorized by the . . . Restriction Agreement or the Notice of Right of First Refusal.

Wertzer moved to dismiss Coelho's counterclaims for breach of contract and slander of title. Prior to the hearing, Coelho voluntarily dismissed without prejudice his claim for slander of title; at the hearing on the motion, Coelho voluntarily dismissed his counterclaim for breach of contract. The trial court then heard argument regarding Coelho's claim for declaratory judgment. Thereafter, the trial court entered judgment in favor of Wertzer on Coelho's counterclaim for declaratory judgment, finding that (1) Coelho improperly attempted to prevent Wertzer from exercising his

5

right of first refusal to purchase a pro rata percentage of Coelho's units as allowed through the Restriction Agreement through application of contract terms that were not contained in the Restriction Agreement; and (2) the right-of-first-refusal provision of the Restriction Agreement was "valid and enforceable."

"This Court has a duty to raise the question of its jurisdiction in all cases in which there may be any doubt regarding the existence of such jurisdiction."[2]

> OCGA § 5-6-34 (a) (1) authorizes direct appeals to be taken from all final judgments, that is to say, where the case is no longer pending in the court below. An order is considered a final judgment within the meaning of OCGA § 5-6-34 (a) (1) where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court.[3]

Here, although the trial court order purportedly disposed of the Coelho's counterclaim for declaratory judgment, the result is an interlocutory order that leaves pending issues regarding the import of the trial court's decision on the purported

---

[2] (Punctuation and citation omitted.) *Bandy v. Elmo*, 280 Ga. 221 (626 SE2d 505) (2006), quoting *Canoeside Properties v. Livsey*, 277 Ga. 425, 426 (1) (589 SE2d 116) (2003).

[3] (Citation and punctuation omitted.) *CitiFinancial Svcs. v. Holland*, 310 Ga. App. 480, 481 (713 SE2d 678) (2011).

agreement between the parties.[4] Coelho's claim was not truly an action for declaratory judgment because it must be viewed in conjunction with Wertzer's breach of contract claim. By addressing the questions raised in Coelho's counterclaim alone, the trial court only partially addressed Wertzer's claims, leaving outstanding issues to be determined below and resulting in a non-final order before us at this time.[5]

Accordingly, as issues remain pending following the entry of the court's order here, [Coelho's] appeal from such a non-final judgment is subject to the interlocutory appeal procedures of OCGA § 5-6-34 (b). Inasmuch as the decision of the trial court was not a final appealable

---

[4] See *Gelfand v. Gelfand*, 281 Ga. 40, 40-41 (635 SE2d 770) (2006) (dismissing appeal because the action was not truly an action for declaratory judgment in that it requested relief). Compare *Emson Investment Properties v. JHJ Jodeco 65, LLC*, 349 Ga. App. 644, 647 (1) (824 SE2d 113) (2019), citing *Bldg. Block Enterprises v. State Bank & Trust Co.*, 314 Ga. App. 147, 149-150 (1) (723 SE2d 467) (2012).

[5] We do not reach the merits of Coelho's claim, given our conclusion that the proper appeal procedure was not followed in this case. Compare *Willis v. Cheeley*, 363 Ga. App. 341, 342-345 (1) (870 SE2d 907) (2022) (vacating a trial court's declaratory judgment order because there was no justiciable issue for the trial court to determine). See also *Atlanta Nat. League Baseball Club Inc. v. F. F.*, 328 Ga. App. 217, 220 (761 SE2d 613) (2014) ("A party seeking such a judgment must establish that it is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests. Thus[,] a declaratory judgment action will not lie where the rights between the parties have already accrued. . . .").

order and [Coelho] did not secure a certificate of immediate review pursuant to OCGA § 5-6- 34 (b), [his] appeal is hereby dismissed.[6]

*Appeal dismissed. Markle and Padgett, JJ., concur.*

---

[6] (Citation omitted.) *Gelfand*, 281 Ga. at 40-41, citing *Bandy*, 280 Ga. at 221.